16

FILED
MAR 16 2007
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re<br><br>Central Valley Processing, Inc.,<br><br>Debtor. | Case No. 03-11610-B-7 |
| Central Valley Processing, Inc. and Michael McGranahan, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>Robert W. Christian, et al.,<br><br>Defendants. | Adversary Proc. No. 05-1089<br><br>DC No. KDG-44 |

**MEMORANDUM DECISION REGARDING TRUSTEE'S MOTION FOR APPROVAL OF COMPROMISE OF CONTROVERSY AND EVIDENTIARY OBJECTIONS**

T. Scott Belden, Esq., of Klein, DeNatale, Goldner, Cooper, Rosenlieb & Kimball, LLP, appeared on behalf of the chapter 7 trustee, Michael D. McGranahan (the "Trustee").

Riley C. Walter, Esq., of the Walter Law Group, appeared on behalf of the Growers' Committee (the "Growers' Committee").

Michael T. Hertz, Esq., of Lang, Richert & Patch, appeared for George Crafton, Andrew Pursley, Karen Torrano, and Arla Dill.

**This Memorandum Decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of res judicata and claim preclusion.**

124

Before the court is the Trustee's Motion for Order Approving Compromise of Claims Against Former Insiders of Debtor (the "Compromise Motion," the "Trustee's Motion," or the "Motion"). The Growers' Committee opposes the Trustee's Motion. The Growers' Committee also objects to and moves to strike much of the Trustee's supporting evidence (the "Evidentiary Objections"). For the reasons set forth below, the Trustee's Motion will be granted. The Evidentiary Objections will be sustained in part and overruled in part.

The court has jurisdiction over these matters under 28 U.S.C. § 1334 and 11 U.S.C. §§ 105(a), 547, 548, 550,[1] and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). This memorandum decision contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052, made applicable to this contested matter by Federal Rule of Civil Procedure 52.

**The Dispute.**

This bankruptcy case commenced with a voluntary petition under chapter 11 on February 21, 2003. Central Valley Processing, Inc. (the "Debtor") was in the business of processing and selling almonds which the Debtor purchased from numerous entities. At commencement of this case, the Debtor owed money to approximately 64 persons and entities who had grown and delivered almonds to the Debtor in the 2002 crop year (the "Growers"). The case was ultimately converted to chapter 7. The background of the case and the reasons for the appointment of the Growers' Committee are set forth in greater detail below.

[1]Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *prior* to October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

In February 2005, the Trustee filed this adversary proceeding (the "Adversary Proceeding"). Defendants George Crafton, Andrew Pursley, Karen Torrano, Arla Dill, and Robert Christian (the "Defendants") are former directors and officers of the Debtor. They also filed substantial disputed claims against the Debtor for, *inter alia,* indemnity for guaranteed debt and the payment of almonds grown by the Defendants (the "Defendants' Claims.") In essence, the complaint alleges that, in the months leading up to bankruptcy, the Defendants engaged in financial transactions that were self-interested, fraudulent, and detrimental to the Debtor and its creditors. The complaint listed sixteen claims for relief for, *inter alia*, breach of fiduciary duty, collection of monies due and recovery of preferential or fraudulent transfers. The Trustee subsequently filed a supplemental complaint adding a seventeenth claim for relief to disallow the Defendants' claims filed in the main case. The Defendants filed responsive pleadings denying all liability, demanding a jury trial, and raising numerous affirmative defenses. The Trustee now asks this court to approve a global settlement of that Adversary Proceeding (the "Settlement").

The Trustee states in support of the Compromise Motion that he has performed extensive discovery and aggressively prosecuted the Adversary Proceeding. The Trustee and his counsel reviewed and evaluated documents produced in response to discovery in this Adversary Proceeding. The Trustee obtained and reviewed copies of depositions and documents produced in several related state court lawsuits which arose out of events leading up to this bankruptcy case. The Trustee reviewed and evaluated the books and records of the Debtor, testimony given by the Debtor's principals at the section 341(a) creditor meetings, numerous examinations taken pursuant to Fed.R.Bankr.P. 2004, and the documents produced in such examinations.

**The Proposed Settlement.**

In July 2006, the Trustee and the Defendants participated in a mediation which lasted approximately 12 hours. At the conclusion of the mediation, the Trustee and the Defendants negotiated the Settlement which the Trustee now seeks authorization to

consummate. The Settlement contemplates that the Defendants will collectively pay the estate $175,000 in cash or letters of credit to secure future payments. In addition, the Defendants' unsecured claims will be fixed in an amount certain and will be subordinated to the extent they would have received collectively $300,000 from the estate. In exchange, the Trustee agrees to dismiss this Adversary Proceeding and release the Defendants from any further claims held by the estate.

The Trustee's Motion is supported by a declaration from Michael D. McGranahan (the "Trustee's Declaration"), which addresses each of the factors this court must consider in deciding whether to grant the Motion as set forth in *Martin v. Robinson (In re A & C Properties)*, 784 F.2d 1377 (9th Cir. 1986), *cert. denied Martin v. Robinson*, 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed.2d 122 (1986). The Trustee's testimony with regard to each of the *A & C Properties* factors is summarized as follows:

**<u>Probability of Success on the Merits.</u>**

Addressing the likelihood of success on the merits, the Trustee states, "[E]vidence was adduced and positions were taken that demonstrated that success on the claims was not a foregone conclusion and that there were substantial issues raised by the defendants that impacted the likelihood of prevailing at trial." In this Adversary Proceeding the Trustee seeks damages for alleged breaches of fiduciary duty. Such claims are fact intensive and would require an extensive inquiry into the circumstances of each alleged transaction. The uncertainty with respect to whether some or all of such claims could be proven negatively impacts the probability of success on the merits. This factor alone substantially supports the Settlement.

**<u>Complexity of the Litigation, Expense and Delay.</u>**

Addressing the complexity and cost of litigation issue, the Trustee declared, "The cost of completing discovery, experts, and trial, would likely exceed $300,000.00, with no certainty that the result would be better than the settlement achieved." The court has no reason to discount the Trustee's estimation of the litigation cost. The high cost of prosecuting this Adversary Proceeding further supports the reasonableness of the

proposed Settlement.

**Difficulty of Collection.**

With regard to collection issues, the Trustee stated that some of the Defendants did not appear to be well positioned to satisfy a money judgment. Again, the court has no contrary evidence to suggest that this statement is erroneous. The court notes that the Settlement itself is structured in payments, presumably because the Defendants do not all have the financial resources to pay it at once.

**Best Interest of Creditors.**

With regard to the best interest of the creditors, the Trustee declared, "With the cash consideration, I view the total consideration as having a tangible value to the estate of about $375,000.00. With the cost savings and the downside risk of spending $300,000.00 and not getting more for creditors, I believe that the settlement is within the range of reasonableness." This statement by the Trustee speaks for itself.

**Applicable Law.**

The standard for approving a compromise of controversy in the Ninth Circuit is set forth in *In re A & C Properties*, 784 F.2d 1377 as follows:

> The purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims. The law favors compromise and not litigation for its own sake, and as long as the bankruptcy court amply considered the various factors that determined the reasonableness of the compromise, the court's decision must be affirmed. Thus, on review, we must determine whether the settlement entered into by the trustee was reasonable, given the particular circumstances of the case.

*Id.* at 1380-81 (citations omitted).

The Ninth Circuit elaborated on the standard in *Woodson v. Fireman's Fund Insurance Company (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988): "The bankruptcy court has great latitude in approving compromise agreements. However, the court's discretion is not unlimited. The court may approve a compromise only if it is 'fair and equitable.'" (citations omitted).

The Trustee's judgment in proposing a settlement must be informed. *Port O'Call Investment Co. v. Blair (In re Blair)*, 538 F.2d 849, 851 (9th Cir. 1976). The trustee and

the court must weigh the probable costs and benefits. *Id.* The court should give weight to the opinions of the trustee, the parties and their attorneys. *Id.* "Consideration should also be given to the principle that the law favors compromise and not litigation for its own sake." *Id.* The policy favoring settlement is particularly acute in the context of bankruptcy:

> The duties of the trustee are prescribed by the bankruptcy act, and he must institute litigations whenever it is necessary for the purpose of collecting or reducing to money the assets of the bankrupt estate. By this obligation it is not meant that he should burden the assets of the estate with costs and expenses arising out of all manner of questions that may be presented for litigation. . . .

*In re Frigitemp Corp.*, 38 B.R. 563, 567-68 (Bankr. S.D.N.Y. 1984) (quoting *In re Meadows, Williams & Co.*, 181 F. 911, 912 (D.C.N.Y. 1910)).

The Trustee has the burden of persuading the bankruptcy court that the compromise is fair and equitable and satisfies the criteria for approval. *In re A & C Properties*, 784 F.2d at 1381. In determining the fairness, reasonableness and adequacy of a proposed settlement, the court must consider:

> (a) The probability of success in the litigation;
>
> (b) the difficulties, if any, to be encountered in the matter of collection;
>
> (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it;
>
> (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Id.* (citations omitted).

The court is generally familiar with the contentious history and the record of this bankruptcy case. The court has reviewed and considered the Trustee's Declaration in support of the Settlement, and the Growers' Committee's opposition. The court has also considered the oral arguments of counsel at the hearing. The court is satisfied that the Settlement represents a reasonably informed proposal by the Trustee. The Trustee has sustained his burden of proof as to each factor in support of the Settlement. The Settlement, while it may not be perfect or pleasing in all respects, falls within the bounds of fair, equitable, and reasonable given the particular circumstances of the case. *In re A*

*& C Properties*, 784 F.2d at 1381.

**The Growers' Committee's Opposition.**

In a vitriolic response, the Growers' Committee opposes the Compromise Motion. The Growers' Committee also filed the Evidentiary Objections to other declarations offered by the Trustee, specifically the declarations of Michael T. Hertz, Walter W. Whelan, Arlene Dill, and Robert W. Christian (the "Defendants' Declarations").

The Growers' Committee argues in opposition to the Motion, *inter alia*, that the Settlement is too low, that the Trustee has not satisfied the requirements for compromising the controversy, and that the Settlement does not adequately consider the best interest of the creditors. The Growers' Committee demands that the Trustee retain "competent contingency counsel" and try the Adversary Proceeding to completion to produce a hypothetically better result and to protect the "integrity of the bankruptcy system." The Growers' Committee fails to show analytically or factually how rejection of the Settlement is likely to produce a better result for the estate in terms of dollars actually distributed to creditors. Moreover, the Growers' Committee's demands ring of "litigation for its own sake," a principal which was solidly rejected in *Blair*, 530 F.2d at 851.

The Growers' Committee opposes the portion of the Settlement that will fix and allow the Defendants' Claims, even though those Claims are partially subordinated by the Settlement. The Growers' Committee contends that the Defendants' Claims are overstated, that they have been paid, and that subordination of the Defendants' Claims is "illusory." Yet, the Growers' Committee fails to show how allowance of the Defendants' Claims, in any amount, will impact the Growers, most of whom have already been substantially paid as well through the efforts of the Growers' Committee. Settlement of the Defendants' Claims cannot be approved, or disapproved out of context. That dispute is an integral part of the Adversary Proceeding. The fact that the Defendants' Claims are bitterly contested gives further support to the need for a compromise.

The Growers' Committee argues that the Trustee failed to take any depositions in the Adversary Proceeding, that some of the Defendants were never examined by the

Trustee, and that the Trustee was therefore not sufficiently "informed" about the issues to propose a reasonable settlement. Here, the Committee discounts the Trustee's testimony that he conducted "extensive discovery" in written form, and he received "depositions and documents produced in related lawsuits." The United States Trustee and the Trustee also conducted lengthy examinations under § 341(a), both in the chapter 11 case, and after it was converted to chapter 7. There is nothing in the law that requires the Trustee to depose every Defendant, or which limits the Trustee's investigation to discovery conducted within the Adversary Proceeding itself. The Trustee is not required to investigate and answer every question that could be raised in the context of the Adversary Proceeding before the Settlement can be approved. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2nd Cir. 1974).

The Growers' Committee describes the Settlement as a "back door deal" based on the assertion that it was intentionally excluded from the mediation. It argues, based on the "best interest of creditors" factor in *A & C Properties*, that the Trustee was required to consult with the Growers' Committee and obtain the Committee's approval before finalizing the Settlement. The court disagrees. Again, nothing in the law requires the Trustee to consult with any creditors, or any committee of creditors, regarding the prosecution or settlement of an adversary proceeding brought on behalf of the general estate. *A & C Properties* does not impose such a requirement

The Grower's Committee contends that its participation in the Settlement would have aired important "facts known to the Grower creditors." The Growers' Committee fails to elaborate on these "facts," it fails to explain how or why these allegedly material facts were not already known by the Trustee and considered in the Settlement negotiations. The Growers' Committee has been represented by counsel from its inception and the Growers with knowledge of special "facts" have had many opportunities to make those facts known to the Trustee.

The Growers' Committee's opposition is particularly focused on the complaint that the Growers' Committee was not invited to participate in the 12-hour mediation which

preceded the Settlement. The Growers' Committee argues that the Trustee erred in failing to include the Committee in the mediation because it represents the "largest block of creditors." Here, the court is compelled to address, again, the Growers' Committee's roll in this case which is, and has from the beginning, been a limited one. As summarized below, the Growers' Committee was originally appointed in the chapter 11 proceeding to protect the Growers' rights under California Food and Ag. Code. The fact that the Growers' Committee was allowed to continue after conversion of the case to chapter 7 is somewhat of an anomaly. It was necessitated by the fact that the Growers still had certain state law lien rights vis-a-vis the estate and the secured creditors, which the Trustee could not protect. The Growers' Committee was not appointed to represent, generally, any "block of creditors." Neither was it empowered to supervise the Trustee in his general administration of the case on matters not related to the Growers' rights under the California Food and Ag. Code.

This court has previously addressed the function of the Growers' Committee, and its counsel, in a pleading entitled Memorandum Decision Regarding Walter Law Group's Second Application for Approval of Attorney Fees and Expenses and Joint Motion to Surcharge Collateral filed herein on September 8, 2005. In that Memorandum, the court explained, for the record, the reasons for the appointment of the Growers' Committee, and the limited scope of its activities in this case:

> Early in the case, the Debtor brought a motion for use of [American Ag. Credit's] AAC's cash collateral, the pre-petition accounts receivable. The Debtor also sought permission to, in essence, continue selling the Almond Inventory and to use those proceeds to pay operating expenses. The Debtor proposed to give AAC a replacement lien against the Almond Inventory as "adequate protection" for the used cash collateral. This court denied the cash collateral motion without prejudice. However, through that proceeding it became apparent to the court that the Growers, as a group, had priority lien rights against the Almond Inventory pursuant to California Food and Agricultural Code section 55631 (the "Grower Liens"). It also became apparent that (1) many Growers would suffer serious financial hardship if the Almond Inventory was not liquidated and the proceeds distributed to the Growers as soon as possible, and (2) the Growers' rights under State law were not being recognized, honored, or protected by the Debtor.
>
> . . .
>
> As secured creditors, the Growers had common interests which were adverse to both the Debtor, Debtor's management, and the unsecured creditors. Each Grower

had an undivided equal priority interest in a common asset, the Almond Inventory, which was not large enough to satisfy all of the Grower claims. Because of the size and disparity of the Grower group, the common nature of the Grower Liens, and the possibility of other rights and remedies available to the Growers under State law, the court determined that it was neither practical nor prudent to require each Grower to hire independent counsel to protect its rights in this case. Further, the court concluded that the common interests of the Growers could not be effectively represented by either the Debtor, a trustee, or a committee of unsecured creditors. For that reason, the court *sua sponte* ordered the appointment of the Growers' Committee pursuant to 11 U.S.C. § 1102 (a)(2) and the court's inherent authority under 11 U.S.C. § 105(a) to represent and protect the Growers' rights under, *inter alia*, the Cal. Food and Agric. Code. The Growers' Committee was appointed on March 13, 2003. On April 4, 2003, the court authorized the Growers' Committee to employ WLG [Walter Law Group] as its counsel.

**The Segregated Grower Proceeds.**

On June 5, 2003, the court authorized the Debtor to process and sell the Almond Inventory. That effort generated net proceeds of approximately $3.1 million. However, the court ordered the Debtor to segregate the proceeds pending a determination of how to distribute those funds in compliance with applicable law (the "Grower Proceeds"). The court also ordered that the statutory Grower Liens would attach to the Grower Proceeds, subject to further order of the court. The processing costs were to be financed with AAC's cash collateral. The court authorized in advance a surcharge of the Grower Proceeds, not to exceed 5.68 cents per pound of unprocessed almonds, to reimburse AAC for the expenses associated with liquidation of the Almond Inventory.

**The Chapter 11 Trustee.**

On August 12, 2003, the court ordered the appointment of a chapter 11 trustee based upon a showing that the Debtor's management had conflicts of interest and was unable to properly administer the estate. Michael McGranahan was appointed to serve as the chapter 11 trustee. By that time, the Growers' Committee, by default, had become actively involved in administrative activities which were not being handled by Debtor's management. The Growers' Committee assisted the U.S. Trustee in its effort to remove the Debtor's management from control. The court authorized the Trustee to continue processing and selling the remaining Almond Inventory subject to the Growers' Committee's oversight and protection of the Grower Liens. The Committee also undertook the investigation of claims asserted by the individual Growers themselves, including those of the Objecting Creditors. The Committee worked to confirm the amounts of the Growers' claims and whether they qualified to be on the Growers' Committee and to participate in any distribution of Grower Proceeds.

On November 26, 2003, the case was converted to chapter 7 pursuant to 11 U.S.C. § 1112(b) on motion of the U.S. Trustee. Michael McGranahan was reappointed to continue as the chapter 7 trustee. The Grower Proceeds had not yet been distributed and the court also authorized the Growers' Committee to continue functioning with WLG [Walter Law Group] as its counsel.

Having gone to great lengths to define in the above pleading the purpose of the Growers' Committee and the scope of its responsibilities in this case, the court is

compelled to revisit that issue in the context of this Compromise Motion. The Growers' Committee was formed, and subsequently allowed to continue post-conversion, to protect the rights of the Growers as secured creditors with claims against an undivided asset - proceeds from sale of their almond crops. The record suggests that the Growers' Committee and its counsel have done an effective job of getting almond proceeds collected and distributed to the Growers.[2] However, nothing about the pending Adversary Proceeding relates to or affects the almond proceeds, the Growers' rights under the California Food & Ag. Code, or the function of the Growers' Committee as defined above. The Growers' Committee does not exist to represent individual Growers, to supervise the Trustee in his general administration of the estate, his efforts to liquidate general assets, or his payment of unsecured claims. The Growers' Committee was not a party to the Adversary Proceeding, so it had no right to be involved in the mediation. The Settlement resolves only the claims of the bankruptcy estate against the Defendants, it does not, and cannot, operate to release any potential claims which the individual Growers may hold against the same Defendants.[3] Accordingly, the Growers' Committee's argument regarding the "best interest of creditors" is without merit.

The Growers' Committee also argues that the Trustee failed to adequately consider the recent decision by the California Fifth District Court of Appeals in *Frazier Nuts, Inc.*

---

[2]At the hearing, counsel for the Grower's Committee represented that the Growers have or will receive approximately 85% of their claims for the 2002 almond crop. The court is not aware that any of the affected Growers has had to seek bankruptcy protection as a result of this bankruptcy filing.

[3]On January 25, 2006, the Growers' Committee filed adversary proceeding number 06-1033 against the same Defendants for essentially the same claims for relief as asserted here by the estate. That complaint was ultimately dismissed on the Defendants' motions as being duplicative of the Trustee's claims in this Adversary Proceeding and outside of the Growers' Committee's scope of authority. The Growers' Committee was granted leave to file an amended complaint to assert claims personal to the Growers, but it declined to do so.

*v. American Ag Credit*, 141 Cal.App.4th 1263 (2006). It argues that *Frazier Nuts* increased the Defendant's "exposure" to the estate and that the decision constituted a "mandate." [4] This argument is unpersuasive. The *Frazier Nuts* decision deals with rights which the Growers may have against third-party creditors. It "mandates" nothing about claims which the Debtor may have against the Defendants. It does nothing to change the complexity of the Adversary Proceeding as it is already pled. The Growers' Committee fails to explain how the *Frazier Nuts* decision could, or would, affect the likely outcome of this Adversary Proceeding if the Settlement is rejected.

*Frazier Nuts* may be construed to enhance claims which the individual Growers have against those who received pre-petition payment of crop proceeds, but those claims do not inure to the general benefit of the bankruptcy estate. Indeed, if *Frazier Nuts* has any application to this Adversary Proceeding, it could be construed to give the Growers themselves greater claims against the Defendants who directed the use of almond proceeds to pay the secured creditor. The Growers' personal claims against the Defendants necessarily compete with the estate's claims against the Defendants, and affects their ability to pay any ultimate judgment. The existence of the *Frazier Nuts* decision, which potentially increases the Defendants' personal liability to the Growers, appears to support the need for a compromise.

---

[4] *Frazier Nuts* is closely related to this bankruptcy. In *Frazier Nuts*, a group of the Growers brought an action in the state court against secured creditor American Ag. Credit ("AAC"), to recover the pre-petition crop proceeds which the Debtor had used to pay the secured claims of AAC. The almond inventory and related crop proceeds were part of AAC's collateral under the terms of AAC's loan and security documents with the Debtor. AAC also held personal guarantees from some of the Debtor's officers and directors who made the decision to pay AAC instead of the Growers as required by the California Food and Ag. Code. The trial court dismissed the Growers' Claims against AAC on the grounds that the Growers' statutory producers' lien did not extend to the crop proceeds. The Court of Appeals reversed, holding that the statutory producers' lien does extend to the crop proceeds, the producers' lien trumps AAC's contractual lien, and use of the crop proceeds to pay AAC's loan ahead of the Growers was wrongful.

**Evidentiary Objections and Motion to Strike.**

The Growers' Committee objects to, and moves to strike the Defendants' Declarations on the grounds that the statements made in them constitute legal conclusions, lack a proper foundation, and are based on speculation and hearsay. The Evidentiary Objections will be sustained in part and overruled in part.

The Evidentiary Objection with regard to the Declaration of Michael T. Hertz ("Hertz Declaration") will be sustained. A witness may not testify to a matter unless the witness has personal knowledge of the matter. Federal Rule of Evidence 602. Here, Mr. Hertz acknowledges in paragraph 4 of his Declaration that he does not have personal knowledge of all stated facts. Thereafter, he makes no effort to differentiate between those facts to which he may have personal knowledge, and those facts for which he does not. The Hertz Declaration is therefore inadmissible.

The Evidentiary Objection with regard to the Declaration of Walter W. Whelan ("Whelan Declaration") will be sustained for the same reason. The Whelan Declaration does not include any evidence to show that Mr. Whelan has personal knowledge of the factual matters stated in his Declaration. Mr. Whelan's opinion in paragraph 6 of the Declaration therefore lacks a foundation.

The Evidentiary Objection to the Declaration of Arla Dill will be sustained because Ms. Dill is, in essence, attempting to validate the Declaration of Robert W. Christian ("Christian Declaration") regarding one disputed transaction. Ms. Dill's testimony is based on hearsay "conversations" with third parties. She acknowledges having "little information concerning this transaction."

Finally, the Evidentiary Objection to the Christian Declaration will be overruled. As to all factual matters stated in the Christian Declaration, Mr. Christian states affirmatively that he has personal knowledge of those facts. As to all other statements, opinions, etc., the court has not considered those statements for any purpose except as further illustration of how complicated and difficult this Adversary Proceeding will be if the Settlement is not approved. The court has not reviewed or relied upon any of the

Defendants' Declarations in granting the Trustee's Compromise Motion.

**Conclusion.**

Based on the foregoing, the court finds and concludes that the Trustee has adequately established that the Settlement is reasonable, fair and equitable. The Compromise Motion will be granted. The Growers' Committee's Evidentiary Objections to the Declarations of Michael T. Hertz, Walter W. Whelan, and Arla Dill, will be sustained. The Evidentiary Objection to the Christian Declaration will be overruled.

Dated: March 16, 2007

W. Richard Lee
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re<br>Central Valley Processing, Inc.,<br>Debtor. | Case No. 03-11610-B-7 |
| Central Valley Processing, Inc. and Michael McGranahan, Chapter 7 Trustee,<br>Plaintiff,<br>v.<br>Robert W. Christian, et al.,<br>Defendants. | Adversary Proc. No. 05-1089<br>DC No. KDG-44 |

**ORDER GRANTING TRUSTEE'S MOTION FOR APPROVAL OF COMPROMISE OF CONTROVERSY, SUSTAINING IN PART AND OVERRULING IN PART EVIDENTIARY OBJECTIONS**

Based on the Memorandum Decision on file herewith, and good cause appearing,

IT IS HEREBY ORDERED that the Trustee's Motion for Order Approving Compromise of Claims Against Former Insiders of Debtor is GRANTED.

IT IS FURTHER ORDERED that the Growers' Committee's Evidentiary Objections to the Declarations of Michael T. Hertz, Walter W. Whelan, and Arla Dill, are SUSTAINED. The Evidentiary Objection to the Christian Declaration is OVERRULED.

Dated: March ________, 2007

W. Richard Lee
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

CERTIFICATE OF MAILING

The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was mailed today to the following entities listed at the address shown on the attached list or shown below.

Office of the US Trustee
2500 Tulare St Rm 1401
Fresno, CA 93721

Carl Collins
1127 12th St #202
PO Box 3291
Modesto, CA 95353-3291

Lisa Holder
4550 California Ave 2nd Fl
Bakersfield, CA 93309

Michael Hertz
PO Box 40012
Fresno, CA 93755-0012

Riley Walter
7110 N Fresno St #400
Fresno, CA 93720

T. Belden
4550 California Ave 2nd Fl
Bakersfield, CA 93309-1172

Walter Whelan
7108 N Fresno St #450
Fresno, CA 93720

Michael McGranahan
PO Box 5018
Modesto, CA 95352-5018

Central Valley Processing, Inc.
2001 Grogon Ave
Merced, CA 95340

Hilton Ryder
PO Box 28912
Fresno, CA 93729-8912

DATED: 3/19/07

By: Tamara Joaquin
Deputy Clerk

EDC 3-070 (New 4/21/00)